## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

FAUSTINO XAVIER BETANCOURT-COLON; VIRGEN NEGRON-VILLEGAS, A.V.R. by her next friend and mother, Widallys Rivera Quiñones; and WILLIAM RODRIGUEZ BURGOS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CITY OF SAN JUAN, a public entity also known as Municipality of San Juan

Defendant.

Civil No. 19-1837 (CAG)

## AMENDED COMPLAINT
### *(AS A MATTER OF COURSE)*

Plaintiffs, Faustino Xavier Betancourt-Colon, Virgen Negron-Villegas, A.V.R. by her next friend and mother, Widallys Rivera Quiñones, and William Rodríguez Burgos, on behalf of themselves and all others similarly situated, hereby complain of Defendant City of San Juan, also known as "Municipality of San Juan" or "Municipio de San Juan" (hereinafter referred to as "Defendant" or "the City") and allege as follows:

1

# **INTRODUCTION**

1.     This lawsuit is brought against Defendant to redress its systemic, pervasive, and continuing policy, pattern, or practice of unlawfully discriminating against Plaintiffs and similarly situated individuals with mobility disabilities. As alleged further below, the City has failed and continues to fail to install and maintain curb ramps that are necessary to make its pedestrian right of way readily accessible to people with mobility disabilities, and to comply with its obligation to install and/or remediate curb ramps when it engages in alterations or new construction of streets, bus stops, and sidewalks. A substantial number of the street crossings within the City's pedestrian right of way do not comply with applicable state and federal regulations addressing accessibility for people with disabilities because, for example, they lack curb ramps entirely, have curb ramps on only one side of a corner, have curb ramps that are too narrow, too steep, or too cracked, broken, or uplifted to be used by people with mobility disabilities.

2.     The City's pedestrian right of way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors. Accessible curb ramps are necessary to permit people with mobility disabilities who use mobility aids such as wheelchairs, scooters,

canes, walkers, or crutches to access the City's pedestrian right of way. Because the City's pedestrian right of way constitutes a core mode of transportation, the absence of accessible curb ramps prevents people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including employment, housing, education, transportation, public accommodations, and recreation, among others. Accordingly, an accessible pedestrian right of way is essential to realizing the integration mandate of disability non-discrimination laws, including the ADA and the Rehabilitation Act.

3.     Named Plaintiffs Faustino Xavier Betancourt-Colon and Virgen Negron-Villegas are two individuals with mobility disabilities who bring this action on behalf of themselves and all persons with mobility disabilities who, like Named Plaintiffs, live in, work in, or visit San Juan and are being discriminated against and subjected to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of way.

4.     Federal disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life. See 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")); 42 U.S.C. § 12101(a)(7) (Americans with Disabilities Act

("ADA")). Under the ADA and Section 504, a public entity's sidewalks, crosswalks and paved paths—collectively referred to as a public entity's "pedestrian right of way"—are a "program," "service," or "activity" that must be readily accessible to persons with mobility disabilities. Barden v. City of Sacramento, 292 F.3d 1073, 1076 (9th Cir. 2002); Procurador De Personas Con Impedimentos v. Municipality of San Juan, 541 F.Supp.2d 468, 471-73 (DPR2008). As detailed further below, Defendant has excluded Plaintiffs and all other similarly situated individuals with mobility disabilities from participation in or denied them the benefits of Defendant's pedestrian right of way program, service, or activity, or subjected them to discrimination by: a) failing to install and remediate curb ramps in newly-constructed or altered portions of the City's pedestrian right of way; and, b) failing to install, remediate and maintain curb ramps where necessary to provide people with mobility disabilities meaningful access to the City's pedestrian right of way, when viewed in its entirety.

5.      Both the ADA (since January 27, 1992) and Section 504 (since June 3, 1977) have mandated that whenever a government entity newly constructs a bus stop pad or newly constructs or alters streets, roads, or highways, it must install curb ramps at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, to ensure that newly

constructed or altered pedestrian right of way programs and facilities are readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.151(a)(1), (b)(1), (b)(4)(i)(1), (b)(4)(i)(2); 28 C.F.R. pt. 36, app. D § 10.2.1; 45 C.F.R. § 84.23(b); 36 C.F.R. pt. 1191, app. D § 810.2.3. The ADA and Section 504 also mandate that a public entity operate each program, service, or activity so that the program, service, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150(a), (b)(1); 45 C.F.R. § 84.22(a), (b). To the extent structural changes to facilities existing as of the effective date of the ADA or Section 504 are necessary to achieve this "program access" mandate, such changes were to have been made by no later than January 26, 1995 under the ADA, and by no later than June 3, 1980 under Section 504. 28 C.F.R. § 35.150(c); 45 C.F.R. § 84.22(d).

6.      The City's pedestrian right of way, when viewed in its entirety, is not readily accessible to and usable by persons with mobility disabilities due to the City's failure to install and maintain accessible curb ramps. In addition, the City has failed to install accessible curb ramps or remediate existing curb ramps as part of new construction or alterations of its streets, roadways, and highways. As a result, Plaintiffs and other persons with mobility disabilities must forgo participation in daily activities —

including visiting public facilities, places of public accommodation, or friends — or risk injury or damage to their mobility devices by traveling on or around inaccessible portions of the pedestrian right of way. At times, Plaintiffs are able to use the pedestrian right of way, but only by taking circuitous routes to avoid barriers to accessibility, which wastes their time and energy. As a result of the many missing and noncompliant curb ramps in the City, people with mobility disabilities do not have full and equal access to the pedestrian right of way.

7.      The discrimination and denial of meaningful, equal and safe access to the City's pedestrian right of way for persons with mobility disabilities complained of herein is the direct result of Defendant's policies, procedures, and practices with regard to pedestrian walkways and disability access,  including, but not limited to the following:

    i.  The failure to install accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable federal disability access laws or on any other reasonable schedule;

   ii.  The failure to install accessible curb ramps, or remediate existing noncompliant curb ramps, at street corners or sidewalks that are newly constructed, resurfaced or otherwise altered;

iii.   The failure to install curb ramps at intersections in the City that are necessary to provide meaningful, equal and safe access to the pedestrian right of way;

iv.   The failure to develop and implement a process for identifying intersections and corners throughout the City at which curb ramps are necessary to provide meaningful, equal, and safe access to the pedestrian right of way;

v.   The failure to adopt and utilize or require and enforce the utilization of a curb ramp design that complies with applicable federal and state design standards or guidelines;

vi.   The failure to install accessible curb ramps within a reasonable time frame after receiving a request to do so or otherwise being notified of the need for an accessible curb ramp at a particular location;

vii.   The failure to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, repairing, and maintaining the pedestrian right of way, including curb ramps, as required by Title II of the ADA and its implementing regulations including 28 C.F.R. § 35.133 (maintenance of accessible features);

viii.   The failure to remediate corners with no curb ramps or with curb ramps that are not properly positioned such that they require

pedestrians with mobility disabilities to travel around the corner in the street alongside vehicular traffic in order to access a crossing, or cause pedestrians with mobility disabilities to roll or fall into the roadway;

ix. The failure to remediate curb ramps that are designed and/or constructed in a noncompliant manner such that people with mobility disabilities are denied meaningful access to the pedestrian right of way as a whole. These deficiencies often include one or more of the following:

1. Running, cross, and side slopes of curb ramps that are excessively steep;

2. Ramps that are too narrow to accommodate wheelchairs or scooters;

3. Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing persons with mobility disabilities to use the much steeper side flares or roll off the sidewalk entirely;

4. Excessive counter slopes at the bottoms of curb ramps. The combination of excessive curb ramp slopes and/or gutter pan counter slopes often forces wheelchair users to scrape the

paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury; and

5. Lips at the bottom of curb ramps where the ramp meets the gutter. Such non-flush transitions create additional risks of scraping the pavement and/or sudden stops and possible falls and injury. Federal access codes have required smooth transitions at the base of curb ramps for several decades.

8. These administrative methods, policies, and practices, or lack thereof, discriminate against persons with disabilities by denying them access to the City's pedestrian right of way. Large sections of the more than 1,000 miles of sidewalks within the City's pedestrian right of way are inaccessible to persons with mobility disabilities due to missing or faulty curb ramps. Representative and illustrative examples of the foregoing types of disability access barriers located throughout the City are identified below.

9. For decades, Defendant has failed to meet ADA and Section 504 accessibility requirements and failed to adopt and implement systematic efforts to ensure that the City's pedestrian right of way is readily accessible to and useable by persons with mobility disabilities. Furthermore,

Defendant has for decades made compliance with the ADA and Section 504 a lower priority than other activities and projects, including discretionary activities and projects not mandated by law. Prioritizing compliance with the ADA and Section 504 in this manner also constitutes a policy or practice that denies program access to and discriminates against persons with mobility disabilities. This lawsuit seeks a court order requiring Defendant to comply with these laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right of way over 29 years after the enactment of the ADA and many more years after enactment of Section 504 protections.

10.     Named Plaintiff Faustino Xavier Betancourt-Colon made efforts to resolve this dispute without litigation. He identified multiple deficiencies involving the sidewalks and filed a formal complaint before the *Defensoria de las Personas con Impedimento* (Puerto Rico's state government protection and advocacy agency), complaint number 2018-060307. The City of San Juan admitted the violations, according to the *Defensoria,* but the defendant ignored its obligations under state and federal law.

11.     Plaintiffs thus bring this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131, et seq., and its accompanying regulations, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq. and its accompanying

regulations. Plaintiffs seek declaratory and injunctive relief pursuant to the above statutes and an award of reasonable attorneys' fees and costs under applicable law.

## JURISDICTION AND VENUE

12. This is an action for declaratory and injunctive relief, brought pursuant to Title II of the ADA, 42 U.S.C. § 12101 to 12213 and Section 504, 29 U.S.C. § 794, et seq. to redress systemic civil rights violations against people with mobility disabilities by the City of San Juan.

13. This Court has jurisdiction over this action under 28 U.S.C. § 1331 for claims arising under the ADA and Section 504.

14. This Court has jurisdiction over this action under 28 U.S.C. § 1343 for claims arising under the ADA and Section 504.

15. This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

16. Venue over Plaintiffs' claims is proper in the District of Puerto Rico because Defendant resides in the District of Puerto Rico within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District of Puerto Rico.

## PARTIES

17.     Named Plaintiff Faustino Xavier Betancourt-Colon lives and works as a
        volunteer community leader in San Juan, Puerto Rico. Plaintiff Betancourt-
        Colon has a mobility disability that substantially limits his ability to walk,
        and frequently uses a wheelchair and scooter for mobility due to his
        disability. Plaintiff Betancourt-Colon is a "qualified person with a
        disability" and a person with "a disability" within the meaning of all
        applicable statutes and regulations including 42 U.S.C. § 12131(2), 28
        C.F.R. § 35.104, 29 U.S.C. § 705(20)(B).

18.     Named Plaintiff Virgen Negron-Villegas lives in San Juan, Puerto Rico.
        Plaintiff Negron-Villegas has a mobility disability and she cannot walk.
        She uses a wheelchair for mobility due to her disability (spina bifida).
        Plaintiff Negron-Villegas is a "qualified person with a disability" and a
        person with "a disability" within the meaning of all applicable statutes and
        regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C.
        § 705(20)(B).

19.     Named Plaintiff A.V.R. lives in Toa Alta, Puerto Rico. Plaintiff A.V.R.
        has a mobility disability and cannot walk; she uses a wheelchair for
        mobility due to her disability (spina bifida, cerebral palsy). Plaintiff
        Negron-Villegas is a "qualified person with a disability" and a person with
        "a disability" within the meaning of all applicable statutes and regulations

including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B).

20. Named Plaintiff William Rodríguez-Burgos lives in Canovanas, Puerto Rico and frequently visits San Juan area for medical appointments and as a tourist. Plaintiff Rodríguez-Burgos has a mobility disability, multiple sclerosis, that substantially limits his ability to walk. Plaintiff Rodríguez-Burgos is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B).

21. The Plaintiff class consists of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of San Juan through the date of judgment in this action.

22. Hereafter, references in this document to "Plaintiffs" shall be deemed to include the Named Plaintiffs and each member of the class, unless otherwise indicated.

23. Presently, and at all times relevant to this complaint, Defendant City of San Juan, also known as Municipality of San Juan, has been a public entity within the meaning of Title II of the ADA and has received federal

financial assistance within the meaning of the Rehabilitation Act sufficient to invoke its coverage.

24.    The City is a local government entity with the responsibility of providing Plaintiffs with access to its public facilities, programs, services, and activities. The City is responsible for constructing, maintaining, repairing, and regulating its pedestrian right of way.

## **FACTS APPLICABLE TO ALL CLAIMS**

25.    As a result of Defendant's policies and practices with regard to curb ramps in the City's pedestrian right of way, people with mobility disabilities have been discriminated against and denied full and equal access to the benefits of the City's pedestrian right of way program or service.

26.    Hereafter, an "Inaccessible" curb ramp shall refer to a curb ramp that did not comply with applicable standards for accessible design (i.e., the Uniform Federal Accessibility Standards ("UFAS"), 1991 ADA Standards for Accessible Design ("ADAAG") or the 2010 ADA Standards for Accessible Design ("2010 ADAAG")), at the time it was constructed or altered.

27.    Defendant has failed and is failing to install, remediate, repair, and maintain curb ramps, i.e. thousands of intersections in the City have no

curb ramps or an inadequate number of curb ramps. Even where curb ramps exist, many are improperly installed and/or maintained, lack a flush transition to the street, have excessively steep running, cross, and side slopes, are too narrow, and/or are otherwise noncompliant. Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, and/or caved.

28.     As a result of Defendant's policies and practices with regard to curb ramps, large segments of the City's pedestrian right of way do not comply with new construction or alteration accessibility requirements. For example, the City has consistently failed to install curb ramps and remediate existing curb ramps when it alters or constructs sidewalks and streets.

29.     As a result of the many missing and noncompliant curb ramps at intersections throughout the City, the pedestrian right of way, viewed in its entirety, is inaccessible to persons with mobility disabilities. Plaintiffs and others with mobility disabilities are therefore denied meaningful access to the City's pedestrian right of way, public buildings, parks, transportation, and/or places of employment and public accommodation, either through complete denials of access or through delay of travel or unsafe conditions.

30.     This lack of accessible curb ramps is not isolated or limited. Rather, these barriers to full and equal access to the pedestrian right of way exist

throughout the City, thus denying individuals with mobility disabilities full, equal, and meaningful access to the pedestrian right of way City-wide. Persons with mobility disabilities encounter missing or Inaccessible curb ramps throughout the City, including in such areas, neigborhoods, and streets as Cupey Gardens, Reparto San Rafael, Ciudad Señorial, El Señorial, Alturas de Cupey, Paseo Mayor, Paseo de Las Vistas, Paseo Las Brisas, Monacillo, La Cumbre, Villa del Alar, San Fernando,  Las Americas, Ramon/Villa Nevarez, San Ana, University Gardens, Caparra Terrace, Avenida Central, Avenida Americo Miranda, Avenida Domenech, Avenida Central, Avenida Universidad, Ave Ponce de Leon, Avenida Eleonor Roosevelt, Hill Brothers Norte, Seburuco, Polvorín, Los Peñas, San Felipe, Tierra Santa, Shangai, Israel /Bitumul, Playita, Villa Clemente, El Gandul, La Marina, Vista Alegre, Sierra Maestra, El Hoyo Caimito, Monacillos, Parcelas Caneja, Tortugo, Sector Julito, Morcello, Quebrada   Arenas,   Trastalleres,   Campo   Alegre,   Yambele, Chícharo/Seboruco, Jurutungo, Barrio Obrero, Sector La Marina, Cantera, Las Monjas, Buena Vista (Hato Rey), Parada 27, Buena Vista (Santurce), Barrio Obrero, Sector San Ciprian, Barrio Obrero Oeste, Jardines de Berwing, Balcones de San Martín, Altos del cabro, Barriada Figueroa, Hill Brothers Sur, Barrio Dulce, El Checo, La Perla, Villa Palmeras, Puerta de

Tierra, Buen Consejo, Barriada Venezuela, Victoria, Antigua Via El Hoyo
I,  Barriada Borinquen, Polvorín-Monacillos, Los Romeros, Los Martínez,
Tabonucal, Las Curias, Plesbisito 1,2 y 3, Capetillo, and Parcelas Falú,
Hospital Auxilio Mutuo / SER de Puerto Rico area, Placita Roosvelt area,
and the areas near the U.S. District Court for the District of Puerto
Ricoamong others. As a result, persons with mobility disabilities have been
denied access to the accommodations and services available to the general
public. Furthermore, these barriers deter persons with mobility disabilities
from exploring or visiting areas of the City. Missing and Inaccessible curb
ramps also delay travel and cause persons with mobility disabilities to fear
for their safety, as these conditions often create dangerous situations.

31.     Defendant has not provided and does not provide persons with mobility
disabilities with any map (whether paper or electronic), signage or other
form of notice of any routes, or parts of routes, in the City's pedestrian
right of way that are accessible to persons with mobility disabilities. Notice
of completed accessibility improvements and plans for scheduled
accessibility improvements are not posted on the City websites, and notice
of such information is not made otherwise available to persons with
mobility disabilities. As a result of the lack of any notice, maps, or signage
regarding the location of accessible routes within the City's pedestrian

right of way, persons with mobility disabilities have been and continue to be deterred from and impeded in travelling to various parts of the City, thus denying them meaningful and equal access to the City's pedestrian right of way and its other facilities, programs, services, and activities.

32. Defendant failed to prepare and implement a timely Self Evaluation relating to the construction and maintenance of curb ramps as required by federal law. The federal regulations of Section 504 of the Rehabilitation Act and the ADA require that public entities create a Self Evaluation by June 3, 1978 and July 26, 1992, respectively. 45 C.F.R § 84.6; 28 C.F.R. § 35.105. A Self Evaluation must include an evaluation of whether current services, policies, and practices discriminate on the basis of disability. The City has made no efforts to evaluate its pedestrian right of way for accessibility. The City has made no survey to determine the existence of curb ramps at intersections within the City despite of the deadlines established by Section 504 and the ADA.

33. Defendant has failed and is failing to prepare and implement a Transition Plan relating to the construction and maintenance of curb ramps in the pedestrian right of way as required by federal law. The regulations implementing Section 504 of the Rehabilitation Act required public entities that receive federal financial assistance to create a Transition Plans

by June 3, 1978. See 45 C.F.R. § 84.22(e). The regulations implementing Title II of the ADA required local governmental entities to create Transition Plans by July 26, 1992. See 28 C.F.R. § 35.150(d). A Transition Plan must include, among other things, an up-to-date schedule for providing curb ramps or other sloped areas where the pedestrian right of way crosses streets. See 28 C.F.R. § 35.150(d)(3); 45 C.F.R. § 84.22(e). To date, Defendant has not prepared a compliant Transition Plan pursuant to either Section 504 or the ADA.

34.     Defendant's failure to conduct a timely Self Evaluation and prepare and implement a compliant Transition Plan relating to the pedestrian right of way, including curb ramps, as required by Section 504 and the ADA, is further evidence of Defendant's failure to comply with the "program access" requirements of both statutes.

35.     This discrimination and continuing systemic inaccessibility cause a real and immediate threat of current and continuing harm to persons with mobility disabilities within the City as represented by the experiences of the Named Plaintiffs.

## EXPERIENCES OF THE NAMED PLAINTIFFS

36.     Named Plaintiff Faustino Xavier Betancourt-Colon uses an electric wheelchair and scooter for mobility. His conditions include: Congestive

heart failure (20% heart function), hydrocephalus, and leg deformity.  He lives in the Los Lirios Public Housing (GPS 18.355672, -66.044050) neighborhood of Cupey, San Juan, Puerto Rico. He has encountered numerous barriers to full and equal use of the pedestrian right of way in neighborhoods throughout the City. This includes, but is not limited to those described below. In particular, Plaintiff Faustino Xavier Betancourt-Colon encounters many barriers to accessibility in his neighborhood. For example, at the intersection at Las Vista Shopping Village (GPS 18.357517, -66.062465), there are no curb ramps at any corner. Additionally, at the corner of Ceciliana Street and Campillana Street (GPS 18.359592, -66.046375), there are no curb ramps that allow travel from northwest to southeast across the Ceciliana street. Additionally, at the corner of Hortensia Street and Campillana Street (GPS (GPS 18.360739, 066.04504), there are no curb ramps that allow travel from northwest to southeast across the Hortensia street. Additionally, at the corner of Ceciliana Street and Monte Brito Street (GPS 18.363495, -66.048893), there are no curb ramps that allow travel from northwest to southeast across the Monte Brito street.

37.    At these and other intersections with missing curb ramps, Plaintiff Faustino Xavier Betancourt-Colon must use driveways to descend to street level and

then ride in the street with vehicular traffic, which places him in danger. While riding in the street with vehicular traffic, he has been detained and questioned by law enforcement officers of the City. Plaintiff Faustino Xavier Betancourt-Colon enjoys spending time in his neighborhood for social engagements, entertainment events, and community events. Frequently, he is forced to travel by car instead of by wheelchair due to the many missing curb ramps. In addition, he travels within his neighborhood far less frequently than he would like to due to the dangers involved in attempting to navigate the City's pedestrian right of way.

38.  Plaintiff Faustino Xavier Betancourt-Colon also encounters many barriers to accessibility in the San Juan City Hospital area. For example, along Paseo Jose Celso Barbosa, there are intersections with no curb ramps. For example, along Paseo Jose Celso Barbosa and Centro Medico Avenue, almost all ramps at the intersections have "Inaccessible" curb ramps at the corners. Specifically, there are "Inaccessible" curb ramps or no curb ramps at the following locations: Jose Celso Barbosa Street (18.393210, -66.075142), Centro Medico Avenue (18.392572, -66.075274), Jose Celso Barbosa Street (18.394801. -66.072109), Jose Celso Barbosa Street ( 18.396820, -66.075381). Other sample barriers include inexistent curb tramps at Andalucía Avenue and Acapulco Street (18.415183, -

66.079562); inexistent curb ramps between Carlos Chardon Avenue and Teniente Cesar Gonzalez (18.423805. -66.067777), inexistent curb ramp between Teniente Cesar Gonzalez Avenue and Manuel Camuñas St. ( 18.425463, -66.068071); no curb ramp at Calle Carlos Chardon at 18.424641, -66.065096. Due to the many barriers to accessibility in the near his home and many other areas of San Juan, Plaintiff Faustino Xavier Betancourt-Colon's ability to travel throughout San Juan is compromised. He frequently has to allow a great deal of extra time to reach his destination just so that he will be able to find parking in a location near a route that he knows to be accessible. Other times, Plaintiff Faustino Xavier Betancourt-Colon is forced to pay extra money for a parking spot close to his destination, such as when he attends his medical appointments, in order to avoid the great dangers involved in trying to navigate the pedestrian right of way while having to use the vehicular roadway. In addition, the inaccessibility of the pedestrian right of way in the City has become a factor in his major life decisions. For example, in deciding where to buy groceries, Plaintiff Faustino Xavier Betancourt-Colon is taking into account whether he will be able to reach his destination via the pedestrian right of way.

39.    The following images are representative the conditions of the sidewalks in San Juan:



Images: inexistent curb-ramps

Centro Medico area, San Juan



Image: inexistent curb ramp

Ceciliana Street, Cupey, San Juan, Puerto Rico



Ceciliana Street, Cupey, San Juan, Puerto Rico



Cristo Street, San Juan



149  Winston Churchill Ave, San Juan



155 Winston Churchill Ave, San Juan

(GPS coordinates: 18.368891, -66.064602)

40.    Plaintiff Xavier Betancourt-Colon is aware of the barriers described above and was deterred from using the Inaccessible Sidewalks on a particular occasion, September 5, 2019. Plaintiff continues to be a disabled individual deterred from using the sidewalks because the sidewalks, in their current state, represent a risk to his safety that he is not willing to take at this time. Based on Plaintiff's direct observations, Plaintiff is continuously aware that he will face architectural barriers such as inexistent curb ramps. Inexistent curb ramps forces Plaintiff to, for example, use his wheelchair on the vehicular way until a curb ramp is available, which represents an unreasonable risk to his personal safety.

41.    Plaintiff also directly encountered the barriers described above on August 5, 2019, among others. For example, on August 5, 2019 he observed an inaccessible curb ramp front of the Municipality of San Juan building at 18.425273, -66.062741. Plaintiff knew at the time that using that sidewalk would pose an unnecessary risk danger to his safety.

42.    As a result of the foregoing, Plaintiff William Rodríguez-Burgos has been and continues to be denied equal access to the City's right of way that persons without mobility disabilities enjoy. On September 1, 2019, he was deterred from visiting Old San Juan because of the many Inaccessible Sidewalks in the area, i.e. at 18.467081, -66.118499 (San Sebastian St.,

Int. Del Cristo St.). He is often deterred from visiting San Juan because the Inaccessible Sidewalks represent a treat to his safety. In addition, for example, Plaintiff no longer visits his urologist, Dr. Pablo Cardona (1431 Avenida Juan Ponce de León, San Juan, 00909, Puerto Rico) (GPS 18.447167, -66.069552) because of the Inaccessible Sidewalks in this area.

43.     He is also forced to risk his safety by traveling in the street because there are insufficient accessible curb ramps to allow him to travel freely on City sidewalks. As a result of these and other missing curb ramps in his neighborhood and in San Juan, Plaintiff Rodríguez-Burgos is limited in his ability to travel the sidewalks and thoroughfares of his own neighborhood and in San Juan. When he does use the pedestrian right of way, Plaintiff Rodríguez-Burgos is often forced to use unpredictable driveways to descend to street level, which can be dangerous because it puts him in the line of vehicular traffic. As a result of the foregoing, Plaintiff Rodríguez-Burgos has been and continues to be limited in his ability to use much of the pedestrian right of way in the City due to poorly positioned, steep, or missing curb ramps. **The need to use circuitous routes can cause delay and unsafe situations such as being hit by a car when using the vehicular way.** Traveling in the street causes Plaintiff Rodríguez-Burgos stress, great inconvenience, and undue risk to his safety.

44.     Plaintiff Rodríguez-Burgos is aware of the barriers described above and was deterred from using the Inaccessible Sidewalks on a particular occasion, September 5, 2019. Plaintiff continues to be a disabled individual deterred from using the sidewalks because the sidewalks, in their current state, represent a risk to his safety that he is not willing to take at this time. Based on Plaintiff's direct observations, Plaintiff is continuously aware that he will face architectural barriers such as inexistent curb ramps. Inexistent curb ramps forces Plaintiff to, for example, use his wheelchair on the vehicular way until a curb ramp is available, which represents an unreasonable risk to his personal safety.

45.     As a result of the foregoing, Plaintiff Rodríguez-Burgos has been and continues to be denied equal access to the Santurce and Old San Juan neighborhood and other parts of this community that persons without mobility disabilities enjoy. He is often deterred from visiting these areas because he chooses instead to remain at home safe from the serious risks involved in navigating the inaccessible pedestrian right of way. He is also forced to risk his safety by traveling in the street because there are insufficient accessible curb ramps to allow him to travel freely on City sidewalks. As a result of these and other missing curb ramps in this neighborhood and in San Juan, Plaintiff Rodríguez-Burgos is limited in his

ability to travel the sidewalks and thoroughfares of Santurce and Old San Juan. When he does use the pedestrian right of way, Plaintiff Rodríguez-Burgos is often forced to use unpredictable driveways to descend to street level, which can be dangerous because it puts him in the line of vehicular traffic. As a result of the foregoing, Plaintiff has been and continues to be limited in his ability to use much of the pedestrian right of way in the City due to poorly positioned, steep, or missing curb ramps. The need to use circuitous routes can cause delay and unsafe situations Traveling in the street causes Plaintiff Rodríguez-Burgos stress, great inconvenience, and undue risk to his safety.

46.     Named Plaintiff Virgen Negron-Villegas has spina bifida and hydrocephalus and uses a wheelchair for mobility. She lives in Cupey, San Juan, Puerto Rico (but travels to San Juan on a weekly basis for social engagements, entertainment events, professional meetings, and functions at the school that his children attend. She has encountered numerous obstacles to using portions of the pedestrian right of way throughout the City. This includes, but is not limited to, those described below.

47.     She lives in the Los Lirios Public Housing (GPS 18.355672, -66.044050) neighborhood of Cupey, San Juan, Puerto Rico. She has encountered numerous barriers to full and equal use of the pedestrian right of way her

neighborhood and throughout the City. This includes, but is not limited to those described below.

48.     In particular, Plaintiff Virgen Negron-Villegas encounters many barriers to accessibility (inaccessible curb ramps and deteriorated sidewalks) near her home. For example, at the intersection of Road 199 from Paseos to Los Lirios Public Housing, there are inaccessible curb ramps at all corners for crossing.[1] At the intersection of Ceciliana Street and Road 199, there are inaccessible curb ramps and deteriorated sidewalks. Del Carmen pharmacy (18.354616, -66.040183) and surrounding business are completely inaccessible by wheelchair, forcing Plaintiff Virgen Negron-Villegas into the path of vehicular traffic before reaching a crosswalk. At the intersection of Paraná Avenue and Saluen street, there are no curb ramps (18.372878, -66.066546). At the intersection of Paraná Avenue and Wesser street, there are no curb ramps (18.375112. -66.066068). Similarly, at the intersection of Paraná Avenue and Sena Street, there are no curb ramps (18.377101, -66.064943).  These barriers are within five to seven minutes from Plaintiff's home (walking distance for an able-bodied person).

---

[1] Defendant claims that it does not own or control this specific sidewalk. However, this is only one of the many Inaccessible Sidewalks in violation of the ADA. Moreover, there is factual controversy as to who the owner and operator of this sidewalk. It is alleged that all sidewalks mentioned herein are owned and operated by the Defendant.

49.     Due to these and other barriers, Plaintiff Virgen Negron-Villegas must choose between her time and her safety when he travels on the pedestrian right of way in the City. She sometimes travels up to three times the distance of a direct route in order to find usable curb ramps, while also avoiding other obstacles, such as the naturally hilly terrain. When Plaintiff Virgen Negron-Villegas encounters corners that are missing curb ramps, she must use a driveway in the middle of the street, if one is even available, to descend to street level and then ride in the street along with vehicular traffic until she reaches the intersection, which endangers her safety. Corners with curb ramps that do not align with the crosswalk are also dangerous, because she is forced into the line of traffic. On several occasions, she has nearly been hit by a car at intersections with missing or unsafe curb ramps. If Plaintiff Virgen Negron-Villegas attempts to ride over a curb with no curb ramp, she risks falling out of her wheelchair or damaging his wheelchair. She often finds that her wheelchair batteries become depleted due to the longer routes he must take to reach his destination. If her wheelchair were to break down due to overuse or damage, Plaintiff would be stranded and vulnerable. Thus, Plaintiff Virgen Negron-Villegas experiences a great deal of stress and fear because of the

many access barriers that he encounters in the City's pedestrian right of way.

50.    Plaintiff Virgen Negron-Villegas is aware of the barriers described above and was deterred from using the Inaccessible Sidewalks on a particular occasion, September 5, 2019. Plaintiff continues to be a disabled individual deterred from using the sidewalks because the sidewalks, in their current state, represent a risk to her safety that she is not willing to take at this time. Based on Plaintiff's direct observations, Plaintiff is continuously aware that he will face architectural barriers such as inexistent curb ramps. Inexistent curb ramps forces Plaintiff to, for example, use his wheelchair on the vehicular way until a curb ramp is available, which represents an unreasonable risk to his personal safety.

51.    Plaintiff also directly encountered the barriers described above on August 5, 2019.

52.    Named Plaintiff A.R.V. has spina bifida, hydrocephalus, cerebral palsy and uses a wheelchair for mobility. AVR's mental age is 12 and she is unable to understand the nature of this proceeding, which is why she filed suit by her next friend, her mother. AVR lives in Toa Alta, Puerto Rico (but frequently travels to San Juan for medical appointments, entertainment, and as a tourist. For example, she is (or has been) a patient

of the following medical doctors in the San Juan: Dr. Juan Vigo Prieto, Neurosurgeon (Santurce); Rene Vazquez Botet, Ophthalmologist (Domenech Street, San Juan); Jesus R. Velez Borras, neurologist (Domenech Street, San Juan); Manuel Celso Garcia Ariz, orthopedic surgeon (Centro Medico, Rio Piedras, San Juan, PR); Renan A. Dieppa Alvarez, urologist (Reparto Metropolitano, San Juan, 00921); Jesus Alvelo, pediatrician (Bayamon). Her last medical appointment was in August 2019. AVR has encountered numerous obstacles to using portions of the pedestrian right of way throughout the City, particularly in those areas near her medical doctors are located. This includes, but is not limited to, those described below.

53.   Plaintiff also encounters Inaccessible Curbs in Old San Juan, an area that she visits as a tourist. Her last visit to Old San Juan was on October 20, 2019. The image below shows AVR (wheelchair) and her family on October 20, 2019. During her visit, she personally encountered non-existent curb ramps and barriers to her access.



54.     Due to these and other barriers, Plaintiff AVR and her family is

        discouraged and deterred from visiting her medical doctor and Old San

        Juan because they know that they will encounters corners that are missing

        curb ramps (for example, at 18.466662, -66.117409; 18.468023, -

        66.120892), she must use a driveway in the middle of the street, if one is

        even available, to descend to street level and then ride in the street along

with vehicular traffic until she reaches the intersection, which endangers her and her family's safety. Corners with curb ramps that do not align with the crosswalk are also dangerous, because she is forced into the line of traffic.  When Plaintiff AVR attempts to ride over a curb with no curb ramp, she risks falling out of her wheelchair or damaging her wheelchair. If her wheelchair were to break down due to damage, Plaintiff would be stranded and vulnerable. Thus, Plaintiff AVR and her family experiences a great deal of stress and fear because of the many access barriers that she and her family are aware of.

55.    Plaintiff AVR is aware of the barriers described above and was deterred from using many Inaccessible Sidewalks at Old San Juan on a particular occasion, October 20, 2019. Plaintiff continues to be a disabled individual deterred from using the sidewalks because the sidewalks, in their current state, represent a risk to her safety that she is not willing to take. Based on Plaintiff's direct observations, Plaintiff is continuously aware that she will face architectural barriers such as inexistent curb ramps or improperly configured curb-ramps. Inexistent curb ramps forces Plaintiff to, for example, use her wheelchair on the vehicular way until a curb ramp is available, which represents an unreasonable risk to her personal safety.

56.     As a result of the foregoing, Plaintiff AVR is deterred from visiting many areas of San Juan as frequently as she would like to. When she does attempt to navigate the pedestrian right of way in the City, she experiences stress and great inconvenience. She also faces serious risks to her safety when he encounters missing or inadequate curb ramps and is forced to ride into the street.

57.     These experiences are typical of those experienced by persons with mobility disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation that people with mobility disabilities experience while trying to navigate the City's pedestrian right of way.

58.     There are other missing and Inaccessible curb ramps at various locations within the City's pedestrian right of way. Other barriers require some form of remediation to meet the City's program access obligations, and/or its obligations to perform new construction and/or alterations in full compliance with federal and state disability access design standards, if any exists. Non-compliance is so severe that they constitute safety hazards to persons with mobility disabilities, including curb ramps with running slopes greater than 8.3%.

59.     The barriers described herein do represent an exhaustive list of missing and Inaccessible curb ramps. The barriers herein merely provides a partial

list of such barriers facing the Named Plaintiffs and class members throughout the City as they attempt to navigate the City's pedestrian routes. Neither the ADA or Section 504, requires Plaintiffs to identify each and every barrier limiting access to the City's pedestrian routes. Rather, the ADA and Section 504 require the City to complete a transition plan identifying barriers at existing facilities, including those barriers involving curb ramps, crosswalks, and mid-block barriers on sidewalks. The City has failed to comply with these requirements as alleged herein.

60.     As a result of the inexistent of improperly configured curb ramps, Plaintiffs have been exposed to increased risks of falling out of their wheelchair, scooter or tripping while using a walker when going over an elevated curb. Plaintiff will introduce expert testimony to show that without curb ramps, plaintiffs are exposed to hazards, i.e. increased risks of falling out of a wheelchair or scooter or tripping while using a walker when going over an elevated curb. Plaintiff's expert testimony will show that curb ramps are essential to enable people with mobility impairments to go to work, to access government buildings, to participate in recreational activities, to shop, and generally to allow such individuals to travel freely through their communities or places they visit.  For individuals with mobility issues to travel independently, curb ramps are essential in providing an accessible

path of travel onto and off of public sidewalks to public facilities, accommodations, transportation, shopping districts, health care facilities, etc. Defendant, however, is not committed to providing equal access to all City residents and visitors.

61.   As a result of this civil action, all plaintiffs are aware of the barriers alleged herein; and these barriers constitute a determent to their access.  "Disabled individuals suffer a concrete and particularized injury when they visit an establishment that does not comply with ADA standards." Medina-Rodriguez v. Fernandez Bakery, Inc., 255 F. Supp. 3d 334, 338 (D.P.R. 2017). Additionally, a plaintiff bringing a Title III ADA claim must "show a real and immediate threat that a particular barrier will cause future harm." Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005) (quoting Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003)). In demonstrating a likelihood of future harm, a plaintiff need not "engage in a futile gesture" of continuously confronting discriminatory barriers; rather, knowledge that those barriers remain in place is sufficient. See 42 U.S.C. § 12188(a)(1); Dudley, 333 F.3d at 305. Furthermore, a disabled individual deterred from visiting a public accommodation because of ADA violations suffers an actual and imminent harm. See Disabled Ams. For Equal Access, 405 F.3d at 64 (quoting

Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002)).

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this action individually, and on behalf of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of San Juan, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

63.    Each member of the class is a "qualified person with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq. The persons in the class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The class consists of tens of thousands of persons with mobility disabilities.

64.    Defendant has failed and continues to fail to comply with the ADA and Section 504 in its implementation of the City's administrative methods, policies, procedures, and practices with regard to the construction, remediation, and maintenance of curb ramps that provide access to the City's pedestrian right of way.

65.     Defendant has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it is in compliance with the ADA and Section 504 to ensure nondiscrimination against persons with mobility disabilities and equal access to facilities, programs, services, and activities for persons with mobility disabilities.

66.     The violations of the ADA and Section 504 set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

67.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole. Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

68.     The claims of the Named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by Defendant. The relief sought herein will benefit all class members alike.

69.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who is competent and experienced in litigating actions under the ADA in Puerto Rico.

70.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are
        met with regard to the proposed class in that:

      i.   The class is so numerous that it would be impractical to bring all
             class members before the Court;

     ii.   There are questions of law and fact which are common to the class;

    iii.   The Named Plaintiffs' claims for declaratory and injunctive relief
             are typical of the claims of the class;

    iv.   The Named Plaintiffs will fairly and adequately represent common
             class interests and are represented by counsel who are experienced
             in law reform class actions and the disability rights issues in this
             case; and

     v.   Defendant has acted or refused to act on grounds generally
             applicable to the class.

71.     The common questions of law and fact, shared by the Named Plaintiffs and
        all class members, include but are not limited to:

      i.   Whether Defendant is violating Title II of the ADA, 42 U.S.C.
             sections 12131, et seq., by failing to install or remediate curb ramps
             that make the City's pedestrian right of way program, service, or
             activity accessible to and useable by persons with mobility

disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

ii.  Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 et seq., by failing to install or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities, and otherwise discriminating against people with mobility disabilities, as set forth above;

iii.  Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, triggering an obligation to construct or retrofit curb ramps; Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 45 C.F.R. § 84.23, triggering an obligation to construct or retrofit curb ramps;

iv.  Whether Defendant, by its actions and omissions alleged herein, has engaged in a pattern or practice of discriminating against Plaintiffs and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

**FIRST CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990**

**42 U.S.C. § 12101 et seq.**

72.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

73.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74.     At all times relevant to this action, the City was and is a "public entity" within the meaning of Title II of the ADA and provides a pedestrian right of way program, service, or activity to the general public.

75.     At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the City. 42 U.S.C. § 12131.

76.     Defendant is mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149. This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities

that have been constructed or altered since January 26, 1992. Pedestrian rights of way themselves constitute a vital public program, service, or activity under Title II of the ADA. 28 C.F.R. § 35.104; Barden v. City of Sacramento, 292 F.3d 1073 (9th Cir. 2002); Procurador De Personas Con Impedimentos v. Municipality of San Juan, 541 F.Supp.2d 468, 471-73 (DPR 2008).

77.     Furthermore, the regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG). 28 C.F.R. § 35.151. A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation. Kinney v. Yerusalim, 9 F.3d 1067, 1073-74 (3rd Cir. 1993); Lonberg v. City of Riverside, No. 97-CV-0237, 2007 WL 2005177, at * 6 (C.D. Cal. 2007).

78.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible

by the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks, and passageways. 28 C.F.R. § 35.104.

79.    Due to the lack of accessible curb ramps as alleged above, as well as Defendant's failure to conduct a timely Self Evaluation and implement a Transition Plan for the pedestrian right of way, the City's pedestrian right of way is not fully, equally, or meaningfully accessible to Plaintiffs when viewed in its entirety. Defendant has therefore violated the "program access" obligation applicable to pedestrian right of way facilities that have not been newly constructed or altered since January 26, 1992.

**80.**    Additionally, the sidewalks, cross walks, and other walkways at issue constitute facilities within the meaning of ADAAG and UFAS. **Plaintiffs are informed, believe, and thereon allege that since January 26, 1992, Defendant has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendant, through its administrative methods, policies, and practices, has failed to make such facilities readily accessible to and usable by persons with disabilities through the construction and retrofit of curb ramps as required under federal accessibility standards and guidelines.**

81.    Plaintiffs are informed, believe, and thereon allege that since March 15, 2012, Defendant has constructed, altered, or repaired parts of these

facilities within the meaning of the ADAAG and the UFAS, and that

Defendant, through its administrative methods, policies, and practices, has

failed to make such facilities compliant with the ADAAG and the UFAS

as updated in 2010, as required under 28 C.F.R. 35.151(c)(5).

82.     Plaintiffs are informed, believe, and thereon allege that Defendant and its

agents and employees have violated and continue to violate Title II of the

ADA by failing to maintain the features of the City's walkways and curb

ramps that are required to be accessible.

83.     Plaintiffs are informed, believe, and thereon allege that Defendant and its

agents and employees have violated and continue to violate Title II of the

ADA by failing to timely respond to and remedy complaints regarding the

lack of accessible curb ramps necessary to ensure access to the City's

pedestrian right of way.

84.     The ADA's regulations at 43 C.F.R. §17.550(a)(3) prevent public entities

from refusing to comply with their obligations to provide persons with

disabilities meaningful access to their programs and services by claiming

that doing so would impose an undue financial or administrative burden,

unless such a determination is made by an agency head or his or her

designee after consulting all agency resources available for use in the

funding and operation of the conducted program or activity and the

determination is accompanied by a written statement of the reasons for reaching that conclusion. On information and belief, the City, through its agency heads and/or designees, has failed to make such a determination accompanied by the required written statement and has, therefore, failed to demonstrate that providing the access Plaintiffs seek to its pedestrian right of way would impose an undue financial or administrative burden.

85. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continue to suffer difficulty, hardship, anxiety, and danger, due to Defendant's failure to remediate missing, defective, Inaccessible curb ramps throughout the City's pedestrian right of way. These failures have denied and continue to deny Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that the ADA requires.

86. Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing future violations, declaratory and injunctive relief are appropriate remedies.

87. Pursuant to 42 U.S.C. § 12133 and 12205, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

**Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. § 794 et seq.**

88.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

89.  Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794(a).

90.  Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City. See 29 U.S.C. § 794(b).

91.  The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

92.  Defendant and its agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's pedestrian right of way and for the reasons set forth above.

93.      Additionally, under Section 504, a recipient of federal financial assistance must install ADAAG- or UFAS-compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after June 3, 1977. Willits v. City of Los Angeles, 925 F. Supp. 2d. 1089, 1094 (C.D. Cal. 2013). Defendant has violated Section 504 by failing to construct or install such compliant curb ramps at intersections throughout the City where it has newly constructed or altered streets, roads, and/or highways since June 3, 1977.

94.      As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate missing, defective, Inaccessible curb ramps throughout the City's pedestrian right of way. These failures have denied Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that Section 504 requires.

95.      Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing violations, declaratory and injunctive relief are appropriate remedies.

96.      Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to declaratory and injunctive relief, and to recover from Defendant the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment as follows:

A. A declaration that Defendant's conduct as alleged herein has violated and continues to violate Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973, and the regulations promulgated under those statutes;

B. Issuance of permanent injunction requiring Defendant to undertake remedial measures to mitigate the effects of Defendant's past and ongoing violations of Title II of the ADA and Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes. At a minimum, Defendant must be enjoined to take the following actions:

  i. Ensure that the City install, remediate, repair, and maintain curb ramps such that, when viewed in its entirety, the City's pedestrian right of way is readily accessible to and useable by individuals with mobility disabilities;

  ii. Ensure prompt remedial measures to cure past violations of the City's requirements to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. §§ 35.151(a), (b), (c) or (i), and Section 504, 45

C.F.R. §§ 84.22, and the curb ramp design standards in effect at the time of such new construction or alterations;

iii.  Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design, or other federal and Puerto Rico disability access design standards, whichever is most stringent in its disability access requirements;

iv.  Ensure that Defendant adopts and implements administrative methods, policies, and practices to maintain accessible curb ramps; and

v.  Remain under this Court's jurisdiction until Defendant fully complies with the Orders of this Court;

C.  Reasonable attorneys' fees and costs, as provided by law; and

D.  Such other relief as the Court finds just and proper.

Dated: December 5, 2019.

**LAW OFFICES OF VELEZ COLON**
421 AVE MUÑOZ RIVERA
TENTH FLOOR
SAN JUAN PR 00918
TEL: (787) 599-9003
*Attorney for Plaintiff*


S/JOSE CARLOS VELEZ-COLÓN, ESQ.
USDC-PR NO.: 231014
jcvelezcolon@gmail.com